**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jglatt@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Julian C. Diamond (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jmarchese@bursor.com
         jdiamond@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MILLETTE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| NVIDIA CORPORATION, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff David Millette ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Nvidia Corporation ("Defendant"). Plaintiff seeks to recover injunctive relief and damages as a result of Defendant's unlawful conduct. Plaintiff makes the following allegations pursuant to the investigation of his counsel and are based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This case addresses the surreptitious, non-consensual use and collection of YouTube users' videos by Defendant in order to train its "Cosmos" AI software, in violation of YouTube's terms of service and that the expense of video creators who are unknowingly creating training models for Defendant's "Cosmos" AI.

2. Cosmos AI is a deep learning AI service created by Defendant that is intended to support additional of Defendant's products, like image generation and automated driving.

3. To develop its Cosmos AI product, Defendant has scrapped millions of YouTube videos without the consent of any YouTube user who has created the video.

4. Defendant, a company valued at over $2 trillion, profits from the collection and use of these videos by creating an AI software critical to supporting Nvidia's products, such as its Omniverse platform which allows developers to create various apps and software,[1] which, as of 2021, has been used by over 2.5 million developers around the world.[2]

5. By collecting and using this data without consent, Defendants have profited significantly from the use of Plaintiff's and Class members' videos, violated California's Unfair Competition Law ("UCL"), and have been unjustly enriched at Plaintiff and Class members' expense.

---

[1] Nvidia, *NVIDIA Omniverse for Developers*, available https://developer.nvidia.com/omniverse#:~:text=NVIDIA%20Omniverse%E2%84%A2%20is%20a,OpenUSD)%20and%20NVIDIA%20RTX%E2%84%A2 (last accessed August 9, 2024).

[2] Damien Fagnou, *NVIDIA Opens Omniverse Platform to Developers Worldwide*, NVIDIA (Aug. 12, 2021), *available* https://developer.nvidia.com/blog/nvidia-opens-omniverse-platform-to-developers-worldwide/ (last accessed August 9, 2024).

## PARTIES

6. Plaintiff David Millette is a resident of Douglas, Massachusetts. Plaintiff created a YouTube account in or around June 2009. During that entire time, Plaintiff has retained ownership rights to the video content he has uploaded to YouTube, per YouTube's Terms of Service.

7. Plaintiff's videos were scraped from YouTube by Defendant for the purpose of training its AI system without permission.

8. Defendant Nvidia Corporation is a California corporation with its principal place of business at 2788 San Tomas Expressway, Santa Clara, California 95051.

## JURISDICTION AND VENUE

9. This Court has subject matter Jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from any Defendants, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains more than 100 members.

10. This Court has personal jurisdiction over the Defendant because Defendant maintains its principal places of business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because Defendant maintains its principal places of business in this District.

## FACTUAL ALLEGATIONS

12. Nvidia, reportedly worth $2.4 trillion, describes itself as an engineer of "the most advanced chips, systems, and software for the AI factories of the future. We build new AI services that help companies create their own AI factories."[3]

---

[3] NVIDIA, *About Us*, available https://www.nvidia.com/en-us/about-nvidia/#nvidia-is-the-engine-of-ai (last accessed August 9, 2024).

13. Of those Defendant has developed its project "Cosmos," which Nvidia describes as a "Deep Learning service" that enables a third party to "rapidly build, train, and deploy neural network models to address [] business demands."[4]

14. "Deep learning is a type of machine learning that uses artificial neural networks to learn from data. Artificial neural networks are inspired by the human brain, and they can be used to solve a wide variety of problems, including image recognition, natural language processing, and speech recognition."[5] Put differently, "[t]he algorithms learn to associate features in [] data with the correct labels. For example, in an image recognition task, the algorithm might learn to associate certain features in an image (such as the shape of an object or the color of an object) with the correct label (such as 'dog' or 'cat')."[6] In practice then, deep learning applications are useful to "identify objects and features in images, such as people, animals, [and] places," "[to] help understand the meaning of text, such as in a customer service chatbot[] and spam filter[]," and to "convert text into images, such as in the Google Translate app."[7]

15. Feeding a deep learning AI video content is critical to its development because, in the case of "Generative AI"[8] for example, "deep learning models [] can learn from patterns in existing content,"[9] like Plaintiff's YouTube videos.

16. Accordingly, the "Cosmos project aims to create a comprehensive video foundation model. This model would integrate simulations of light transport, physics, and intelligence to enable various applications crucial to NVIDIA's product lineup."[10] As such, the program is

---

[4] NVIDIA, *Cosmos Deep Learning*, available https://www.nvidia.com/es-la/gpu-cloud/deep-learning-software/ (last accessed August 9, 2024).

[5] Google Cloud, *What is Deep Learning?*, available https://cloud.google.com/discover/what-is-deep-learning (last accessed August 9, 2024).

[6] *Id.*

[7] *Id.*

[8] Generative AI is a category of AI that autonomously creates text, images, video, data or other content in response to a user's prompt or request.

[9] IBM, *What is Deep Learning*, available https://www.ibm.com/topics/deep-learning (last accessed August 9, 2024).

[10] FP Staff, *NVIDIA has Been 'Stealing' Unbelievable Amounts of Data, Videos from YouTube, Netflix to Train its own AI*, FIRSTPOST (August 6, 20204) *available*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                                 3

intended to be a supporting algorithm "for automated driving, a human-like AI avatar, and Omniverse, a tool for building 3D worlds."[11]  Put simply, the Cosmos AI project is "a sophisticated AI model capable of understanding and generating video content."[12]

17. To develop its Cosmos AI, "Nvidia reportedly used the YouTube data to train its deep learning model[.]"[13]

18. Specifically, "NVIDIA has reportedly instructed its employees to use tools like [an] open-source YouTube video downloader" while also using "virtual machines to download full-length videos while evading detection and avoiding blocks by YouTube.  Additionally, virtual machines on Amazon Web Services [were] employed to refresh IP addresses, enabling download of approximately 80 years' worth of video content per day."[14]

19. Nvidia needs to employ tools to evade YouTube's monitors because, according to YouTube CEO Neal Mohan, "using YouTube to train AI models would be a 'clear violation' of its terms."[15]

20. Nonetheless, according to some estimates, Nvidia "had downloaded 100,000 videos, and in May, an email said that they had compiled 38.5 million URLs[.]"[16]

21. For years, YouTube has been a popular video sharing platform that allows content creators and users to upload and share videos with audiences worldwide.  However, unbeknownst

---

https://www.firstpost.com/tech/nvidia-has-been-stealing-unbelievable-amounts-of-data-videos-from-youtube-netflix-to-train-its-own-ai-13801619.html (last accessed August 9, 2024).

[11] Viktor Eriksson, *Nvidia Reportedly Trained AI Models On YouTube Data*, COMPUTERWORLD (Aug. 7, 2024) *available* https://www.computerworld.com/article/3483812/nvidia-reportedly-trained-ai-models-on-youtube-data.html (last accessed August 9, 2024).

[12] FP Staff, *supra* note 10.

[13] Viktor Eriksson, *supra* note 11.

[14] FP Staff, *supra* note 10.

[15] Will Shanklin*, NVIDIA's AI Team Reportedly Scraped YouTube, Netflix Videos Without Permission*, ENGADGET (August 5, 2024) *available* https://www.engadget.com/ai/nvidias-ai-team-reportedly-scraped-youtube-netflix-videos-without-permission-204942022.html (last accessed August 9, 2024).

[16] Jowi Morales, *Nvidia Accused of Scraping 'A Human Lifetime' of Videos Per Day To Train AI*, TOM'S HARDWARE (Aug. 6, 2024) *available* https://www.tomshardware.com/tech-industry/artificial-intelligence/nvidia-accused-of-scraping-a-human-lifetime-of-videos-per-day-to-train-ai (last accessed August 9, 2024)

to those who upload videos to YouTube, Defendant has been covertly downloading YouTube videos to create training datasets that Defendant's Cosmos AI project.

22. Plaintiff and Class members have retained ownership rights in their uploaded videos, per YouTube's Terms of Service. Plaintiff and Class members did not consent to the use of their videos as training material for Cosmos. Nonetheless, their videos were downloaded for training Cosmos to be a critical support system for Nvidia products.

## CLASS ALLEGATIONS

23. Plaintiff seeks to represent a class defined as all persons or entities domiciled in the United States that uploaded any YouTube video that was fed to and used as training data for the "Cosmos" AI Project without their consent (the "Nationwide Class").

24. Plaintiff also seeks to represent a class defined as all persons or entities domiciled in California that uploaded any YouTube video that was fed to and used as training data for the "Cosmos" AI Project without their consent (the "California Subclass") (collectively with the Nationwide Class, the "Class").

25. Specifically excluded from the Class is Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

26. Plaintiff reserves the right to expand, limit, modify, or amend the class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based on, *inter alia*, changing circumstances and/or new facts obtained.

27. **Numerosity**. On information and belief, hundreds of thousands of video creators fall into the definitions of the Class. Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

28. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendants' use of Plaintiff's videos to train their "Cosmos" AI model constitutes unjust enrichment;

(b) Whether Defendants' conduct alleged herein constitutes Unfair Competition under California Business and Professions Code § 17200 *et seq*.;

(c) Whether this Court should enjoin Defendants from engaging in the unlawful conduct alleged herein, and what the scope of that injunction would be;

(d) Whether any affirmative defense excuses Defendant's conduct;

(e) Whether any statutes of limitation constrain the potential recovery for Plaintiff and the Class;

(f) Whether Plaintiff and the other Class members are entitled to restitution or other relief.

29. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

30. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

31. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class to obtain effective redress for the wrongs committed against the members on an individual basis. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By

contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

32.     Further, Defendant has acted and refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment or Restitution
### (On Behalf of Plaintiff and the Class)

33.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

34.     Plaintiff brings this claim individually and on behalf of members of the Class against the Defendant.

35.     To the extent required by law, Plaintiff brings this claim in the alternative to any legal claims that may be alleged.

36.     Plaintiff brings this claim under the laws of the State of California.

37.     Plaintiff also alternatively alleges this claim as a Quasi-Contract or Non-Quasi-Contract Claim for Restitution and Disgorgement.

38.     Plaintiff and Class members unwittingly conferred a benefit upon Defendant. Nvidia acquired valuable information from Plaintiff and Class members' videos to expand its AI software's training datasets and used that information to develop and improve its products.  In using Plaintiff's information to refine its deep learning AI software, Defendant made its products, which are reliant on its "Cosmos" Project, more valuable to prospective and current users, who purchase, and will be able to purchase, subscriptions and access to those products.  Plaintiff and Class members received nothing from this transaction.  Plaintiff lacks an adequate remedy at law, and pleads this cause of action in the alternative to the extent Plaintiff is required to do so.

39.     Defendant had knowledge of such benefits.

40.     Defendant was aware that it was engaging in prohibited behavior.

41. Defendant has been unjustly enriched in retaining the revenues derived from the sales of their products that are reliant on "Cosmos," which was trained on Plaintiff's and Class members' videos. Retention of those moneys under these circumstances is unjust and inequitable because Defendants did not obtain the meaningful consent of Plaintiff and Class members before using their videos as described above.

42. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

43. Plaintiff and the members of the Class lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

44. Plaintiff and members of the putative class seek non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of their unjust conduct.

**COUNT II**
**UCL – Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**(On behalf of Plaintiff and the Class)**

45. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    8

46. Defendant engaged in unfair business practices by, among other things, using Plaintiff's videos to train its "Cosmos" AI program without permission from Plaintiff or Class members.

47. The unfair business practices described herein violate California Business and Professions Code § 17200 *et seq.* (the "UCL").

48. The unfair business practices described herein violate the UCL because they are unfair, immoral, unethical, oppressive, unscrupulous, or injurious to consumers, and because Defendant used Plaintiff's videos to train its Cosmos AI program for Defendant's own commercial profit without the authorization of Plaintiff or the Class. Defendant unfairly profits from, and takes credit for, developing commercial products based on unattributed reproductions of those stolen videos and ideas.

49. The unlawful business practices described herein violate the UCL because consumers are likely to be deceived. Defendant knowingly and secretively trained Cosmos using unauthorized transcriptions and copies of Plaintiff's videos. Defendant deceptively marketed its reliant products in a manner that fails to attribute the success of their product to the work on which it is based.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated seeks judgment against Defendant as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the laws referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) For injunctive relief as the Corut may deem proper; and

(f) For an order awarding Plaintiff and the Class their reasonable attorney' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 14, 2024                    **BURSOR & FISHER, P.A.**

By: ___/s/ L. Timothy Fisher___
                L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
              jglatt@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Julian C. Diamond (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jmarchese@bursor.com
              jdiamond@bursor.com

*Attorneys for Plaintiff*