**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
           jglatt@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Julian C. Diamond (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jmarchese@bursor.com
           jdiamond@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MILLETTE and RUSLANA PETRYAZHNA, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>    v.<br><br>NVIDIA CORPORATION,<br><br>                          Defendant. | Case No. 5:24-cv-05157-EJD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs David Millette and Ruslana Petryazhna (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Nvidia Corporation ("Defendant" or "Nvidia").  Plaintiffs seek to recover injunctive relief and damages as a result of Defendant's unlawful conduct.  Plaintiffs make the following allegations pursuant to the investigation of their counsel and are based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

### NATURE OF THE ACTION

1.    This case addresses the surreptitious, non-consensual use and collection of YouTube users' videos by Defendant in order to train its AI software, "Cosmos," in violation of YouTube's terms of service and at the expense of video creators who are unknowingly creating training models for Defendant's "Cosmos" AI (hereafter, "Cosmos" or "Cosmos AI").

2.    Cosmos AI is a deep learning AI service created by Defendant that is intended to support Defendant's additional  products, like image generation and automated driving.

3.    To develop its Cosmos AI product, Defendant has scraped millions of YouTube videos without the consent of any YouTube user who created the video.

4.    Defendant, a company valued at over $2 trillion, profits from the collection and use of these videos by creating an AI software critical to supporting Nvidia's products.  One such product is its Omniverse platform which allows developers to create various apps and software.[1] As of 2021, Omniverse has been used by over 2.5 million developers around the world.[2]

5.    By collecting and using this data without consent, Defendant has profited significantly from the use of Plaintiffs' and Class Members' videos, violated California's Unfair Competition Law ("UCL"), have been unjustly enriched at Plaintiffs' and Class Members' expense, and infringed on Plaintiffs' ownership rights in their works.

---

[1] Nvidia, *NVIDIA Omniverse for Developers*, available https://developer.nvidia.com/omniverse#:~:text=NVIDIA%20Omniverse%E2%84%A2%20is%20 a,OpenUSD)%20and%20NVIDIA%20RTX%E2%84%A2 (last accessed August 9, 2024).

[2] Damien Fagnou, *NVIDIA Opens Omniverse Platform to Developers Worldwide*, NVIDIA (Aug. 12, 2021), *available* https://developer.nvidia.com/blog/nvidia-opens-omniverse-platform-to-developers-worldwide/ (last accessed August 9, 2024).

1

**PARTIES**

2      6.      Plaintiff David Millette is a citizen of Massachusetts and resident of Douglas,

3   Massachusetts.  Plaintiff Millette created a YouTube account in or around June 2009.  During that

4   entire time, Plaintiff has retained ownership rights to the video content he has uploaded to

5   YouTube, per YouTube's Terms of Service.

6      7.      Plaintiff Ruslana Petryazhna is a citizen of New York and resident of Astoria, New

7   York.  Plaintiff Petryazhna created a YouTube account in or around 2008.  During that entire time,

8   Plaintiff Petryazhna has retained ownership rights to the video content and numerous songs she has

9   uploaded to YouTube, per YouTube's Terms of Service.  Moreover, Plaintiff Petryazhna has

10   registered her copyright of those works with the United States Copyright Office, *see* **Ex. A**,

11   including her song "A Bubble World," which was uploaded to YouTube 15 years ago.  *See* **Ex. B**.

12      8.      Plaintiffs' videos were scraped from YouTube by Defendant for the purpose of

13   training its AI system without permission.

14      9.      Defendant Nvidia Corporation is a California corporation with its principal place of

15   business at 2788 San Tomas Expressway, Santa Clara, California 95051.

16   **JURISDICTION AND VENUE**

17      10.      This Court has subject matter jurisdiction over this action pursuant to the Class

18   Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because this is a class action in which at

19   least one member of the class is a citizen of a state different from Defendant, the amount in

20   controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains

21   more than 100 members.

22      11.      This Court has personal jurisdiction over Defendant because Defendant maintains

23   its principal places of business in this District and because a substantial part of the events or

24   omissions giving rise to the claims asserted herein occurred in this District.

25      12.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial

26   part of the events or omissions giving rise to the claims asserted herein occurred in this District and

27   because Defendant maintains its principal places of business in this District.

28

1

## **FACTUAL ALLEGATIONS**

2      13.     Nvidia, reportedly worth $2.4 trillion, describes itself as an engineer of "the most

3 advanced chips, systems, and software for the AI factories of the future.  We build new AI services

4 that help companies create their own AI factories."[3]

5      14.     One such service Defendant has developed is its project "Cosmos," which Nvidia

6 describes as a "Deep Learning service" that enables a third party to "rapidly build, train, and

7 deploy neural network models to address [] business demands."[4]

8      15.     "Deep learning is a type of machine learning that uses artificial neural networks to

9 learn from data.  Artificial neural networks are inspired by the human brain, and they can be used

10 to solve a wide variety of problems, including image recognition, natural language processing, and

11 speech recognition."[5]  Put differently, "[t]he algorithms learn to associate features in [] data with

12 the correct labels.  For example, in an image recognition task, the algorithm might learn to

13 associate certain features in an image (such as the shape of an object or the color of an object) with

14 the correct label (such as 'dog' or 'cat')."[6]  In practice then, deep learning applications are useful to

15 "identify objects and features in images, such as people, animals, [and] places," "[to] help

16 understand the meaning of text, such as in a customer service chatbot[] and spam filter[]," and to

17 "convert text into images, such as in the Google Translate app."[7]

18

19

20

21

22

23 ───────────────
24 [3] NVIDIA, *About Us*, available https://www.nvidia.com/en-us/about-nvidia/#nvidia-is-the-engine-of-ai (last accessed August 9, 2024).

25 [4] NVIDIA, *Cosmos Deep Learning*, available https://www.nvidia.com/es-la/gpu-cloud/deep-learning-software/ (last accessed August 9, 2024).

26 [5] Google Cloud, *What is Deep Learning?*, available https://cloud.google.com/discover/what-is-deep-learning (last accessed August 9, 2024).

27 [6] *Id.*

28 [7] *Id.*

16.    Feeding a deep learning AI video content is critical to its development because, in the case of "Generative AI"[8] for example, "deep learning models [] can learn from patterns in existing content,"[9] like Plaintiffs' YouTube videos.

17.    As the U.S. Patent and Trademark Office has observed, LLM "training" "almost by definition involve[s] the reproduction of entire works or substantial portions thereof."[10]

18.    Accordingly, the "Cosmos project aims to create a comprehensive video foundation model.  This model would integrate simulations of light transport, physics, and intelligence to enable various applications crucial to NVIDIA's product lineup."[11]  As such, the program is intended to be a supporting algorithm "for automated driving, a human-like AI avatar, and Omniverse, a tool for building 3D worlds."[12]  Put simply, the Cosmos AI project is "a sophisticated AI model capable of understanding and generating video content."[13]

19.    To develop its Cosmos AI, "Nvidia reportedly used the YouTube data to train its deep learning model[.]"[14]

20.    Specifically, "NVIDIA has reportedly instructed its employees to use tools like [an] open-source YouTube video downloader" while also using "virtual machines to download full-length videos while evading detection and avoiding blocks by YouTube.  Additionally, virtual

---

[8] Generative AI is a category of AI that autonomously creates text, images, video, data or other content in response to a user's prompt or request.

[9] IBM, *What is Deep Learning*, available https://www.ibm.com/topics/deep-learning (last accessed August 9, 2024).

[10] U.S. Patent & Trademark Office, *Public Views on Artificial Intelligence and Intellectual Property Policy*, 2020, *available* https://www.uspto.gov/sites/default/files/documents/USPTO_AI-Report_2020-10-07.pdf.

[11] FP Staff, *NVIDIA has Been 'Stealing' Unbelievable Amounts of Data, Videos from YouTube, Netflix to Train its own AI*, FIRSTPOST (August 6, 20204) *available* https://www.firstpost.com/tech/nvidia-has-been-stealing-unbelievable-amounts-of-data-videos-from-youtube-netflix-to-train-its-own-ai-13801619.html (last accessed August 9, 2024).

[12] Viktor Eriksson, *Nvidia Reportedly Trained AI Models On YouTube Data*, COMPUTERWORLD (Aug. 7, 2024) *available* https://www.computerworld.com/article/3483812/nvidia-reportedly-trained-ai-models-on-youtube-data.html (last accessed August 9, 2024).

[13] FP Staff, *supra* note 11.

[14] Viktor Eriksson, *supra* note 12.

machines on Amazon Web Services [were] employed to refresh IP addresses, enabling download of approximately 80 years' worth of video content per day."[15]

21.    Nvidia needs to employ tools to evade YouTube's monitors because, according to YouTube CEO Neal Mohan, "using YouTube to train AI models would be a 'clear violation' of its terms."[16]

22.    Nonetheless, according to some estimates, Nvidia "had downloaded 100,000 videos, and in May, an email said that they had compiled 38.5 million URLs[.]"[17]

23.    For years, YouTube has been a popular video sharing platform that allows content creators and users to upload and share videos with audiences worldwide.  However, unbeknownst to those who upload videos to YouTube, Defendant has been covertly downloading YouTube videos to create training datasets that Defendant's Cosmos AI project.

24.    Plaintiffs and Class Members have retained ownership rights in their uploaded videos, per YouTube's Terms of Service.  Plaintiffs and Class Members did not consent to the use of their videos as training material for Cosmos.  Nonetheless, their videos were downloaded for training Cosmos to be a critical support system for Nvidia products.

## CLASS ALLEGATIONS

25.    Plaintiffs seek to represent a class defined as all persons or entities domiciled in the United States who uploaded any YouTube video that was fed to and used as training data for the "Cosmos" AI Project without their consent (the "Nationwide Creator Class").

26.    Plaintiff Millette seeks to represent a class defined as all persons or entities domiciled in Massachusetts who uploaded any YouTube video that was fed to and used as training

---

[15] FP Staff, *supra* note 11.

[16] Will Shanklin*, NVIDIA's AI Team Reportedly Scraped YouTube, Netflix Videos Without Permission*, ENGADGET (August 5, 2024) *available* https://www.engadget.com/ai/nvidias-ai-team-reportedly-scraped-youtube-netflix-videos-without-permission-204942022.html (last accessed August 9, 2024).

[17] Jowi Morales, *Nvidia Accused of Scraping 'A Human Lifetime' of Videos Per Day To Train AI*, TOM'S HARDWARE (Aug. 6, 2024) *available* https://www.tomshardware.com/tech-industry/artificial-intelligence/nvidia-accused-of-scraping-a-human-lifetime-of-videos-per-day-to-train-ai (last accessed August 9, 2024).

data for the "Cosmos" AI Project without their consent (the "Massachusetts Creator Subclass") (collectively with the Nationwide Creator Class, the "Creator Classes").

27.    Plaintiff Petryazhna seeks to represent a class defined as all persons or entities domiciled in the United States whose registered copyright material within any YouTube video was transcribed and then used as training data for the "Cosmos" AI Project without their consent (the "Copyright Class").

28.    The Creator Classes and Copyright Class together shall be referred to as the "Classes."

29.    Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

30.    Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, *inter alia*, changing circumstances and/or new facts obtained.

31.    **Numerosity.**  On information and belief, thousands of individuals fall into the definitions of the Classes.  Members of the Classes can be identified through Defendant's records, discovery, and other third-party sources.

32.    **Commonality and Predominance.**  Common questions of law and fact exist as to all Members of the Classes and predominate over any questions affecting only individual Members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)    Whether Defendant's use of Plaintiffs' videos to train their "Cosmos" AI model constitutes unjust enrichment;

(b)    Whether Defendant's conduct alleged herein constitutes Unfair Competition under California Business and Professions Code §§ 17200 *et seq.*;

(c)    Whether this Court should enjoin Defendant from engaging in the unlawful conduct alleged herein, and what the scope of that injunction would be;

(d)    Whether any affirmative defense excuses Defendant's conduct;

(e)    Whether any statutes of limitation constrain the potential recovery for Plaintiffs and the Classes;

(f)    Whether Plaintiffs and the other Members of the Classes are entitled to restitution or other relief;

(g)    Whether Defendants' conduct violated the rights and protections afforded to holders of registered copyrights; and

(h)    Whether Defendants' conduct alleged herein constitutes a violation of Mass. Gen. Law Ch. 93A.

33.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other Members of the Classes in that, among other things, all Members of the Classes were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to the named Plaintiffs.

34.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Classes.

35.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would thus be virtually impossible for the Classes to obtain effective redress for the wrongs committed against the members on an individual basis.  Furthermore, even if Members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a

single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

36.    Further, Defendant has acted and refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final injunctive and declaratory relief with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Unjust Enrichment or Restitution**
**(On Behalf of Plaintiffs and the Classes)**

37.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

38.    Plaintiffs bring this claim under the laws of the State of California.

39.    Plaintiffs bring this claim individually and on behalf of Members of the Classes against the Defendant.

40.    To the extent required by law, Plaintiffs bring this claim in the alternative to any legal claims that may be alleged.

41.    Plaintiffs also alternatively allege this claim as a Quasi-Contract or Non-Quasi-Contract Claim for Restitution and Disgorgement.

42.    Plaintiffs and Members of the Classes unwittingly conferred a benefit upon Defendant. Nvidia acquired valuable information from Plaintiffs and Class Members' videos to expand its AI software's training datasets and used that information to develop and improve its products.  In using Plaintiffs' information to refine its deep learning AI software, Defendant made its products, which are reliant on its "Cosmos" Project, more valuable to prospective and current users, who purchase, and will be able to purchase, subscriptions and access to those products. Plaintiffs and Members of the Classes received nothing from this transaction.  Plaintiffs lack an adequate remedy at law, and plead this cause of action in the alternative to the extent Plaintiffs are required to do so.

43.    Defendant had knowledge of such benefits.

44.    Defendant was aware that it was engaging in prohibited behavior.

45.     Defendant has been unjustly enriched in retaining the revenues derived from the sales of their products that are reliant on "Cosmos," which was trained on Plaintiffs' and Class Members' videos.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not obtain the meaningful consent of Plaintiffs and Class Members before using their videos as described above.

46.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

47.     Plaintiffs and the Members of the Classes lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

48.     Plaintiffs and Members of the putative Classes seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of their unjust conduct.

**COUNT II**
**UCL – Unfair Competition Law**
**Cal.  Bus. & Prof. Code §§ 17200 *et seq.***
**(On Behalf of Plaintiffs and the Classes)**

49.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

50.     Defendant engaged in unfair business practices by, among other things, using Plaintiffs' videos to train its "Cosmos" AI program without permission from Plaintiffs or Class Members.

51.     The unfair business practices described herein violate California Business and Professions Code §§ 17200 *et seq.* (the "UCL").

52.     The unfair business practices described herein violate the UCL because they are unfair, immoral, unethical, oppressive, unscrupulous, or injurious to consumers, and because Defendant used Plaintiffs' videos to train its Cosmos AI program for Defendant's own commercial profit without the authorization of Plaintiffs or the Members of the Classes.  Defendant unfairly profits from, and takes credit for, developing commercial products based on unattributed reproductions of those stolen videos and ideas.

53.     The unlawful business practices described herein violate the UCL because consumers are likely to be deceived.  Defendant knowingly and secretively trained Cosmos using unauthorized transcriptions and copies of Plaintiffs' videos.  Defendant deceptively marketed its reliant products in a manner that fails to attribute the success of their product to the work on which it is based.

54.     Each Plaintiff suffered economic injury as a result of Defendant's actions.  Each Plaintiff was deprived of the value of their works by being deprived of the right to control who can use their works for commercial gain.  By doing so, Defendant deprived Plaintiffs of moneys that would be owed to them had they consented—or granted a license to—use the works.

55.     Conduct is **unfair** under the UCL if it is immoral, unethical, oppressive, or unscrupulous and the conduct outweighs any benefits to consumers.  Defendant's conduct was unfair because it relied on non-consensual use of Plaintiffs' works for Defendant's gain.  Defendant could have sought consent to do so but chose not to.  The conduct outweighs any benefit to consumers.  Defendant knowingly and secretively trained its "Cosmos" AI program using unauthorized transcriptions and copies of Plaintiffs' videos.  Defendant deceptively marketed its products in a manner that fails to attribute the success of their products to the work on which it is based.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT III**
**Massachusetts Unfair and Deceptive Business Practices Act**
**Mass. Gen. Law. Ch. 93A** *et seq.*
**(On Behalf of Plaintiff Millette and the Massachusetts Creator Subclass)**

56.    Plaintiff Millette incorporates by reference and re-alleges each and every allegation set forth above as if fully set forth herein.

57.    Plaintiff Millette brings this claim individually and on behalf of the Members of the Massachusetts Creator Subclass against Defendant.

58.    Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("93A")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."

59.    Section 9 of Chapter 93A prices: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

60.    Pursuant to the definitions codified in Chapter 93A § 1, Defendant is a "person," and Defendant has engaged in "trade" and "commerce" in Massachusetts by engaging in the sale of Products that directly or indirectly affect the people of Massachusetts by scraping YouTube videos created by Plaintiff Millette and the Subclass to train the "Cosmos" AI program.  As described above, that program is employed in a host of products and services which are accessible for use by Massachusetts residents.

61.    By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged, and continues to engage, in unfair and deceptive acts or practices in the conduct of trade or commerce.

62.    Defendant's acts deceive, or have a tendency to deceive, a reasonable consumer of the general public.

63.    Defendant's acts and omissions are material in that reasonable person would attach importance to the information described above and would be induced to act on the information in deciding to use Defendant's products and services advertised to rely on, and which do rely on, Defendant's "Cosmos" AI program.

64.    Plaintiff Millette and the Members of the Massachusetts Creator Subclass were deceived by Defendant's actions in that they had no idea their YouTube content was being used to train Defendant's products for Defendant's commercial benefit.

65.    Plaintiff Millette and the Members of the Massachusetts Creator Subclass did not consent to Defendant's use of their content.

66.    Defendant knowingly committed the acts alleged herein.

67.    Had Plaintiff Millette and the Massachusetts Creator Subclass Members known that Defendant was scraping their content for use to train its products, they would have requested compensation for the misappropriation of their works.

68.    Plaintiff Millette and the Massachusetts Creator Subclass Members were injured as a direct and proximate result of Defendant's misappropriated and non-consensual use of their works.

69.    Plaintiff Millette and the Massachusetts Subclass Members have been harmed by this injury, adverse consequences, and/or loss.

70.    93A represents a fundamental public policy of the Commonwealth of Massachusetts.

71.    For each loss, Plaintiff Millette and each Member of the Massachusetts Creator Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

72.    Disgorgement of profit derived from an unfair and deceptive act or practice is a permissible damage remedy under G.L. c. 93A, § 9.

73.     Accordingly, Plaintiff Millette and the Members of the Massachusetts Creator Subclass seek the disgorgement of profits that defendant has derived from the use of their works to train its "Cosmos" AI program.

74.     Because Defendant acted willfully or knowingly, Plaintiff Millette and the Massachusetts Creator Subclass Members may recover up to three, but not less than two times, this amount.  In addition, Plaintiff Millette may recover attorneys' fees and costs.

75.     Plaintiff Millette and each Member of the Massachusetts Creator Subclass may recover an award of actual damages (in this case unlawful profit by Defendant made possible by training its AI program with Plaintiff's and the Subclass Members' works) or twenty-five dollars, whichever is greater.  Ch. 93A § 9(3).

76.     Plaintiff Millette and the Members of the Massachusetts Creator Subclass may also seek the imposition of injunctive relief which limits and policies Defendant's actions reaching Massachusetts.  The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff, Members of the Massachusetts Creator Subclass, and the general public will be irreparably harmed, absent the entry of permanent injunctive relief against Defendant.  Plaintiff Millette and the Members of the Massachusetts Subclass and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public interest.  Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

**COUNT IV**
**Direct Copyright Infringement**
**17 U.S.C. § 501**
**(On Behalf of Plaintiff Petryazhna and the Copyright Class)**

77.     Plaintiff Petryazhna incorporates by refence and re-alleges each and every allegation set forth above as if fully set forth herein.

78.     As the rightful and legal owner of the registered copyrights in her videos that were transcribed and then used to train the "Cosmos" AI program, Plaintiff Petryazhna holds copyright rights to those videos under 17 U.S.C. § 106.

79.    Plaintiff Petryazhna and the Copyright Class Members' works are original to their creators and are fixed in tangible mediums of expression under 17 U.S.C. § 102(a)(2), (6), and (7).

80.    Plaintiff Petryazhna and the Members of the Copyright Class have duly and timely registered their copyrights in their works with the U.S. Copyright Office.

81.    Plaintiff Petryazhna and the Copyright Class Members are legal or beneficial owners of the exclusive right to reproduce their copyrighted works in copies under 17 U.S.C. § 106(1) and (2), as well as the right to refrain from such reproduction.

82.    Plaintiff never authorized Nvidia to transcribe and make copies of her videos, make derivative works, publicly display copies (or derivative works), or distribute copies (or derivative works).  All those rights belong exclusively to Plaintiff Petryazhna and the Members of the Copyright Class under copyright law.

83.    To train the "Cosmos" AI program, Defendant relied on transcribing and harvesting mass quantities of YouTube videos from the public internet, including Plaintiff Petryazhna's videos.

84.    Nvidia transcribed and made copies of Plaintiff's videos during the training process without Plaintiff's permission.

85.    Because the "Cosmos" AI program cannot function without the expressive information extracted from Plaintiff Petryazhna's works (and others) and retained inside them, the program is itself is an infringing derivative work, made without Plaintiff Petryazhna's permission and in violation of her exclusive rights under the Copyright Act.

86.    Plaintiff Petryazhna has been injured by Nvidia's acts of direct copyright infringement.  Plaintiff Petryazhna is entitled to statutory damages, actual damages, restitution of profits, and/or other remedies provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated seek judgment against Defendant as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representative for the Classes and Plaintiffs' attorneys as Class Counsel;

(b)   For an order declaring that Defendant's conduct violates the laws referenced herein;

(c)   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)   For an order of restitution and all other forms of equitable monetary relief;

(e)   For injunctive relief as the Court may deem proper; and

(f)   For an order awarding Plaintiffs and the Classes their reasonable attorney' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.


Dated:  December 16, 2024                    **BURSOR & FISHER, P.A.**

By: ___*/s/ L. Timothy Fisher*___
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jglatt@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*Pro Hac Vice Forthcoming*)
Julian C. Diamond (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jmarchese@bursor.com
        jdiamond@bursor.com

*Attorneys for Plaintiffs*